# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE V. LONG, JR. | ) | CASE NO. 5:09CV1392 |
| | ) | |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| CVS CAREMARK CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

This memorandum opinion and order arises out of the motion of Plaintiff Lawrence V. Long, Jr., as the administrator of the Estate of Christina Long ("Long") to alter or amend, or to vacate, this Court's January 15, 2010 judgment[1] granting Defendant CVS Caremark Corporation's ("CVS") motion to dismiss Long's complaint. (Doc. No. 14.) Specifically, Long asks this Court to either amend its Judgment to explicitly state that the Judgment was entered "without prejudice" to the merits of his claim, or alternatively to vacate its Judgment as to the dismissal of Long's action in its entirety and stay this lawsuit until the resolution of pending matters in front of the United States District Court for the Northern District of Texas in Case No. 7:03-cv-102, *Klein v. O'Neal, Inc.* (the "Texas Federal Litigation"). For the reasons that follow, Long's motion to alter or amend this Court's Judgment is **GRANTED**, and that Judgment shall be amended to explicitly reflect that the dismissal was "without prejudice." Long's motion to vacate the Judgment is **DENIED**.

---

[1] The Court's judgment of January 15, 2010 consists of a memorandum opinion and order (Doc. No. 12) ("Memorandum Opinion") and a judgment entry (Doc. No. 13) ("Judgment Entry"), which collectively will be referred to as "Judgment."

I.       FACTUAL AND PROCEDURAL BACKGROUND

Except where noted, the facts of this case are undisputed and are reproduced from this Court's Memorandum Opinion and Order. This case stems from the tragic death of an infant, Christina M. Long ("Christina"), who was born prematurely on February 26, 1984. (Doc. No. 1-3 at p. 8, ¶ 26.) Christina was administered E-Ferol Aqueous Solution ("E-Ferol") beginning on or about March 1, 1984. (*Id.* at p. 9, ¶ 26.) On or about April 11, 1984, the Food and Drug Administration requested an immediate emergency recall of E-Ferol based on the results of a Center for Disease Control investigation that revealed E-Ferol was the probable cause of a number of unexplained infant deaths across the country. (*Id.* at p. 9, ¶¶ 37, 38.) Though Christina stopped receiving E-Ferol on or about April 11, 1984, she passed away on June 23, 1984. (*Id.* at p. 9, ¶¶ 39, 40.)

In 2003, the Texas Federal Litigation was initiated against several drug companies, including CVS Revco D.S., Inc., the predecessor to the defendant, seeking recovery for injuries allegedly ceased by E-Ferol.[2] (*Id.* at p. 18, ¶ 65; Doc. No. 4 at p. 3.) In 2004, that court certified the Texas Federal Litigation as a class action. (Doc. No. 1 at p. 18, ¶ 65.) The opt-out period in the Texas Federal Litigation expired on September 11, 2006. (Doc. No. 4 at p. 4.) On January 9, 2009, Long filed a motion for leave to opt out of the class, which was denied on April 29, 2009. (*Id.*)

On March 16, 2009, Long filed suit against CVS, and others, in the Montgomery County Court of Common Pleas (the "Ohio State Litigation"). The Defendants in the Ohio State Litigation filed a motion to stay that case pending resolution of the Texas Federal Litigation, and that motion was granted on June 17, 2009, with the Ohio court observing:

---

[2] *Klein, et al. v. O'Neal, Inc., et al.,* No. 7:03-cv-102, (N.D. Tex., filed May 29, 2003).

2

> [D]enying Defendants' Motion to Stay and allowing the Ohio litigation to proceed
> would result in duplicative litigation that is wasteful of judicial resources. After
> considering the issues in both the Texas and Ohio Litigation, the Court believes
> that it is neither unreasonable nor arbitrary to grant Defendants' Motion to Stay
> due to the potentially dispositive developments in the Texas Litigation.

*Long v. O'Neal, Inc., et al,* No. 09-CV-2144, (Montgomery County Ct. of Common Pleas, filed

June 17, 2009) (Doc. 4-11.)

One day after the Ohio State Litigation was indefinitely stayed, on June 18, 2009,

Long filed his complaint in this lawsuit. (Doc. No. 1.) On July 8, 2009, CVS filed a motion to

dismiss, or alternatively a motion to stay this litigation. (Doc. No. 4.) Long filed an opposition on

August 4, 2009. (Doc. No. 8.) CVS thereafter filed a reply (Doc. No. 9), and the Court granted

Long leave to file a sur-reply, which was deemed filed on August 21, 2009. (Doc. No. 10-1.)

On January 15, 2010, this Court granted CVS's motion to dismiss Long's

complaint, and denied as moot CVS's alternative motion to stay the litigation. (Doc. Nos. 12, 13.)

On January 19, 2010, Long filed his motion to alter or amend, or alternatively, to vacate, this

Court's Judgment, pursuant to FED. R. CIV. P. 59(e). (Doc. No. 14.) That same day, this Court

entered an order establishing a briefing schedule with respect to Long's motion. CVS had until

February 2, 2010, to file its opposition to Long's motion, which it failed to do. This Court,

therefore, treats Long's motion as unopposed. Against this backdrop, this matter is ripe for

decision.

## II.      STANDARD OF REVIEW

### A.      Rule 59(e)

A court may grant a Rule 59(e) motion to alter or amend a judgment, also known

as a motion to reconsider, "if there is: (1) a clear error of law; (2) newly discovered evidence; (3)

an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera*

*Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (internal quotations and citations omitted).

### III.    LAW AND ANALYSIS

### A.    Long's Claims Were Denied Without Prejudice

FED. R. CIV. P. 41(b) governs the effect of involuntary dismissals in federal court. Of concern to Long is language in that rule which states, "[u]nless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—operates as an adjudication on the merits." FED. R. CIV. P. 41(b). Long's concern is unwarranted.

The Supreme Court has cautioned lower courts from taking too narrow a read of the term "lack of jurisdiction" in Rule 41(b). *Costello v. United States*, 365 U.S. 265, 285 (1961). In that case, the Supreme Court held that a dismissal for failure to file the affidavit of good cause in a denaturalization proceeding was a "dismissal for 'lack of jurisdiction' within the meaning of the exception of Rule 41(b)." *Id.* The Court admonished:

> It is too narrow a reading of the [lack of jurisdiction] exception to relate the concept of jurisdiction embodied there to the fundamental jurisdictional defects which render a judgment void and subject to collateral attack, such as lack of jurisdiction over the person or subject matter. We regard the exception as encompassing those dismissals which are based on a plaintiff's failure to comply with a precondition requisite to the Court's going forward to determine the merits of his substantive claim.

*Id.* Justice Brennan explained that the origins of the "lack of jurisdiction" exception found in Rule 41 were in the common law rule that "dismissal on a ground not going to the merits was not ordinarily a bar to a subsequent action on the same claim" and that the enactment of Rule 41(b) did not alter the common law principle. *Id.* He quoted *Hughes v. United States*, 71 U.S. (4 Wall.) 232, 237 (1866), accordingly: "If the first suit was dismissed for defect of pleadings, or parties,

4

or a misconception of the form of proceeding, or the want of jurisdiction, or *was disposed of on any ground which did not go to the merits of the action*, the judgment rendered will prove no bar to another suit." *Costello,* 365 U.S. at 286 (emphasis added).

The Second Circuit has explained, in light of *Costello*:

> the preclusive effect afforded dismissals by Rule 41(b) was intended to apply only to those situations in which a defendant must incur the inconvenience of preparing to meet the merits of the plaintiff's claims because there is no initial bar to the court's reaching the merits as there would be, for illustrative purposes, if there were a defect in pleadings or parties.

*Nasser v. Isthmian Lines*, 331 F.2d 124, 127 (2d Cir. 1964).

The "preclusive effects afforded dismissals by Rule 41(b)" are inapplicable to dismissals made pursuant to the first-to-file rule because such dismissals clearly fall under the "lack of jurisdiction" exception contained in Rule 41(b). The first-to-file rule, based on a principle of encouraging comity among federal courts, embodies the well-established principle that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. M'Iver*, 22 U.S. 532, 535 (1824). The generally recognized doctrine of federal comity permits a district court to decline jurisdiction over an action when a complaint involving nearly identical parties and issues has already been filed in another district. *See, e.g, Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982). The court that declines jurisdiction renders no opinion, or for that matter, makes no inquiry, as to the substantive merits presented by the claim, but rather defers to "the court in which the first suit was filed [which] should generally proceed to judgment." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007). A dismissal based on the first-to-file rule is "disposed of on [a] ground which [does] not go to the merits of the action,"

and therefore, "the judgment rendered will prove no bar to another suit." *Costello,* 365 U.S. at 286.

Long is correct that courts sometimes explicitly state that motions to dismiss granted on first-to-file grounds are dismissed without prejudice. *See, e.g., Nartron Corp. v. Quantum Research Group, Ltd.*, 473 F. Supp. 2d 790, 798 (E.D. Mich. 2007). As discussed above, however, these dismissals are inherently without prejudice, rendering the "without prejudice" modifier surplusage, albeit harmless. Further reflecting the general and obvious understanding that a dismissal under the first-to-file rule is without prejudice, a party who attempted to offensively assert a first-to-file dismissal as a substantive determination of the merits of the case in the first-filed court would likely face sanctions. The Court has been unable to locate, nor has Long pointed to, any case law where this most unlikely scenario has arisen.

Moreover, this Court has been able to locate only one case where a district judge dismissed a case on first-to-file grounds *with prejudice*, a holding which the Fifth Circuit found to be a clear abuse of discretion, noting especially that there was some risk the first-filed court might not have personal jurisdiction over the defendants. *Burger v. American Maritime Officers Union*, Case No. 97-31158, 1999 WL 46962 (5th Cir. January 27, 1999) ("It was therefore within the district court's broad discretion to decline jurisdiction over [plaintiff's] claims, and to defer to the first-filed court in order to avoid unnecessary litigation and the risk of an inconsistent result. However, we find that the district court abused its discretion in dismissing the claims against [defendants] with prejudice rather than staying the proceedings or dismissing the claims without prejudice.").

While, as explained above, Long's concern is unwarranted, the Court is sympathetic to his concern, especially given the unique procedural posture of this litigation. As

expounded upon below, Long's declaratory relief action dismissed by this Court was not the second-filed, but the *third-filed* action, behind both the Texas Federal Litigation and the Ohio State Litigation (the indefinitely stayed case in the Montgomery County Court of Common Pleas). Moreover, the amendment to the judgment requested by Long does not alter any substantive rights of the parties, is unopposed, and can only serve to reduce later potential confusion. While this Court did not err by omitting the words "without prejudice" in its Judgment, the Supreme Court has held, in an abstention case involving a Rule 59(e) motion, "[a]lthough the District Court may have intended its judgment of dismissal to be without prejudice, [. . .] the court did deny appellants' motion for an amendment to the judgment making clear that no prejudice would attach. The motion should have been granted." *American Trial Lawyers Ass'n v. New Jersey Supreme Court,* 409 U.S. 467, 469 (1973) (*per curiam*). Therefore, Long's Rule 59(e) motion to alter or amend the Judgment to explicitly reflect that the dismissal was "without prejudice" is **GRANTED**.

**B.     The Court Declines to Vacate its Earlier Judgment**

Long's motion also argues that this Court should vacate its Judgment as to the dismissal of Long's action in its entirety and should instead stay this lawsuit until the resolution of pending matters in front of the United States District Court for the Northern District of Texas. The Court disagrees, and reaffirms its conclusion that dismissal, not a stay, is appropriate here.

Long's dismissed complaint sought relief under the Declaratory Judgments Act, 28 U.S.C. § 2201. Specifically, Long sought an order stating that CVS is liable as a successor by merger to all E-Ferol liabilities of Revco, D.S., Inc. ("Revco"), a bankrupt predecessor to CVS. As reflected in this Court's Memorandum Opinion and Order, Long's complaint was dismissed because the Court determined application of the first-to-file rule was appropriate and that the

7

issue presented by Long's action for declaratory relief, namely the effect of the Revco bankruptcy order on CVS's liability for injuries caused by E-Ferol, was an "issue [that] is plainly before the Texas district court." (Doc. No. 12 at p. 5.)

Long devotes five pages of his motion to regurgitating the arguments presented before the Texas district court regarding his contention that the Texas class should be decertified, or modified to exclude him, or that he should be permitted to opt out of the class. Long argues that, in the event any of his arguments are successful in Texas, he will be "relieved from any binding effect of the Texas Federal Litigation and may pursue [his] own claims in whatever court [he chooses]" and that therefore this Court should exercise its discretion to stay this lawsuit rather than dismissing it. (Doc. No. 14 at p. 10.) While Long initially wished to use this declaratory judgment action to bolster his chances of a favorable outcome in the Texas Federal Litigation (Doc. No. 12 at p. 8), he now appears to recognize that if the Texas district court does not decertify or modify the class, or allow him to opt out, his claims against CVS will be extinguished. This declaratory judgment action is, in the first instance therefore, totally contingent on the outcome of the Texas Federal Litigation, which, as explained in this Court's Memorandum Opinion and Order, has the issue of CVS's liability to Long in front of it.

Even assuming *arguendo* that Long prevails in the Texas district court and obtains a decision granting him the ability to litigate his claims elsewhere, he fails to address the fact *there is already another pending lawsuit* posing the issue he wishes to litigate here. That lawsuit, the Ohio State Litigation, is currently stayed in the Montgomery County Court of Common

Pleas, the court where *Long* first chose to pursue his individual claims.[3] There, "CVS has asserted as an affirmative defense [. . .] that 'Plaintiff's claims have been released and/or discharged through bankruptcy,' which defense is based on the terms of the Order and the Plan in the Revco Bankruptcy." (Doc. No. 1 at ¶ 14.) And, as discussed below, regardless of whether Long prevails in the Texas Federal Litigation and is permitted to litigate his claims elsewhere, this Court declines jurisdiction over his declaratory judgment action. Therefore, the Court declines to vacate its Judgment and stay this action.

       1.    **The Declaratory Judgments Act**

       The Declaratory Judgments Act provides that a federal court's power to give a declaratory judgment is permissive, not mandatory. *See Grand Trunk Western R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984) (citing 28 U.S.C. § 2201). "Where a district court is presented with a claim [. . .] it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942). In deciding whether to exercise its discretion, courts in the Sixth Circuit consider the following factors: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would help clarify the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for *res judicata*;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and

---

[3] To be clear, this Court considers the state court litigation, though stayed, pending. Given the state court's reasoning in granting the stay, there is no reason to expect the indefinite stay in the state court will not be promptly lifted if Long prevails in the Texas district court. *See Long v. O'Neal, Inc., et al.*, Case No. 09-cv-2144 (Montgomery County Court of Common Pleas June 17, 2009) (granting Defendants' motion to stay "due to the potentially dispositive developments in the Texas Litigation"). (Doc. No. 4-11 at p. 4.)

9

improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better and more effective. *Grand Trunk*, 746 F.2d at 326 (citations omitted).

2.     **The Declaratory Action Would Not Settle the Controversy**

The declaration sought by Long would not settle the controversy between the parties. The Sixth Circuit has not addressed the situation presented here, where a federal court is asked to issue a declaratory judgment (at the request of the state court plaintiff) as to whether a bankruptcy order has discharged a potential liability of one of several defendants in a pending state court action. A somewhat analogous scenario,[4] in the sense that the declaratory judgment ruling could potentially obviate the need for participation of a defendant in the state court action, however, arises in the context of insurance coverage disputes. The Sixth Circuit has frequently confronted the situation where an insurer files for declaratory judgment in federal court to determine its rights and liabilities as to its duty to defend an insured in a state court action and "[t]wo lines of precedent seem to have developed in [the Sixth Circuit's] jurisprudence regarding consideration of this first factor [of the *Grand Trunk* test] in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008).

In *Scottsdale Ins.,* the Court extensively discussed the two lines of cases, and that discussion is reproduced here:

> Two lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor [of the *Great Trunk* test] in the context of an insurance company's suit to determine its policy liability. One set of cases has concluded that a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action. *See West Am. Ins. Co. v. Prewitt*, 208 F. App'x 393, 396 (6th Cir. 2006) (unpublished); *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("[W]hile the declaratory judgment would

---

[4] Though not entirely so, especially considering that the state court plaintiff in this case also brought the federal declaratory judgment action.

not end the dispute between Cailu and Stewart, it would settle the controversy regarding the scope of insurance coverage issued by Northland to Cailu, and whether Northland had a duty to defend the insureds."); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987) ("The grant of declaratory relief in insurance coverage cases undoubtedly settles the controversy over the insurer's liability to provide a defense for and/or indemnify its insured, thus clarifying the legal relations in issue."); *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986).

A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *See Travelers*, 495 F.3d at 272 ("Granting the declaratory relief sought by Evanston and Travelers settles the scope of the insurance coverage under the respective policies and clarifies their obligation to defend Bowling Green in the state court action, but it does nothing to 'clarify the legal relationship' between the other parties."); *U.S. Fire Ins. Co. v. Abex Aluminum, Inc*., 161 F. App'x 562, 565 (6th Cir. 2006) (unpublished); *Bituminous*, 373 F.3d at 814; *Omaha Prop. & Cas. Ins. Co. v. Johnson*, 923 F.2d 446, 448 (6th Cir. 1991); *Odom*, 799 F.2d at 251 (Merritt, J., dissenting) ("[D]eclaratory judgment actions seeking an advance opinion on indemnity issues are rarely helpful when there is an ongoing action in another court. [. . .] Such actions seldom resolve the entire dispute among the parties and they create confusion among courts as to schedules, orderly resolution of factual disputes and res judicata."); *Grand Trunk*, 746 F.2d at 326 ("The instant action does not involve an independent dispute because it arises from and affects a pending Illinois lawsuit. It would not clear up the legal issues in that case.").

The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios.

*Scottsdale Ins. Co.*, 513 F.3d at 556.

Comparing the factual scenario in this case to the lines of cases discussed above, the Court holds that this case is closer to the second line of cases, because "while [this] declaratory action might clarify the relationship between [Long and CVS, it does] not settle the ultimate controversy between the parties in state court." *Id.* Unlike the insurer-plaintiffs in *Northland, Prewitt,* and *Green, supra,* CVS is a named party to the state court lawsuit. Moreover, and unlike the situations in those cases, the dispute between Long and CVS cannot be

11

height

characterized as a mere legal question that, upon resolution, will either obviate or mandate the need for further participation by one party. The narrow question presented to this Court for declaratory judgment addresses only the threshold question of whether CVS is liable as a successor by merger to all E-Ferol liabilities of Revco, not whether Revco is in fact liable at all. If Long's theory is correct, and CVS is liable as a successor to Revco, the issue of Revco's liability must still be determined. That issue is squarely before the Montgomery County court. Furthermore, to pass judgment on the threshold question, a court will have to make a factual inquiry into when Long's cause of action accrued.[5] This determination will involve facts common to several defendants in the Ohio State Litigation, who, given the nature of Long's claims, are likely to raise statute of limitations as a defense. As previously noted, "[d]eclaratory judgment actions seeking an advance opinion [. . .] are rarely helpful when there is an ongoing action in another court." *Odom*, 799 F.2d at 251 (Merritt, J., dissenting). Indeed, to do so here would risk creating "confusion among courts as to schedules, orderly resolution of factual disputes and res judicata." *Id.*

Like *Grand Trunk*, "the instant action does not involve an independent dispute because it arises from and affects a pending [state court] lawsuit. It would not clear up the legal issues in that case." *Grand Trunk*, 746 F.2d at 326. The Ohio State Litigation includes other interested parties, such as the hospital and the treating physicians, who may bear some liability as to Long's claims. Those parties are not before this Court and, regardless of the outcome in this case, those parties' potential liability is not affected in any way. Therefore, this Court concludes that the declaratory action would not settle the controversy.

---

[5] Long asserts this determination is a matter of Ohio law, that his claims did not accrue until November 2007, and by implication that his claims against CVS as a successor to Revco are not barred by the Revco bankruptcy order. (Doc. No. 8 at p. 12.) This Court expressly makes no opinion as to any of these claims.

12

3.    **The Declaratory Action Would Help Clarify the Legal Relations in Issue**

The second factor in the Grand Trunk analysis is closely related to the first factor and is often considered in connection with it. *See, e.g., Travelers,* 495 F.3d at 271-72. "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co.*, 513 F.3d at 557.

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide *a final resolution of the discrete dispute presented.* While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second Grand Trunk factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.* (emphasis added). In this case, as discussed above, the "discrete dispute presented" is whether CVS is liable as a successor by merger to all E-Ferol liabilities of Revco. Although this issue is squarely before the Ohio state court and the declaratory action would not settle the controversy, the declaratory action would provide "a final resolution of the discrete dispute presented," and therefore would help clarify the legal relations in issue.

Long recognizes, as he must, that the "Montgomery County Common Pleas Court is potentially competent to decided the discharge question" that is presented in his complaint. (Doc. No. 8 at p. 6.) *See, e.g., Hamilton v. Herr (In re Hamilton),* 540 F.3d 367, 373 (6th Cir. 2008) (recognizing "courts have interpreted 28 U.S.C. § 1334(b) as granting concurrent jurisdiction to state courts to determine the nondischargeability of debts"). In *In re Hamilton*, the Sixth Circuit acknowledged that state courts "are allowed to construe the discharge in bankruptcy, but what they are not allowed to do is construe the discharge incorrectly." *Id.* at 375. There, the court found a tension between § 1334(b)'s conveyance of concurrent jurisdiction to

13

state courts to determine the nondischargeability of debts, 11 U.S.C. § 524(a), which governs the effect of bankruptcy discharges on judgments "at any time obtained," and the *Rooker-Feldman* doctrine, which aims to preserve state-court authority by preventing lower federal courts from reviewing state court decisions absent the specific authorization of Congress. *Id.*

The Sixth Circuit resolved the tension by holding that the *Rooker-Feldman* doctrine does not apply "when a state-court judgment effectively modifies a bankruptcy court's discharge order [because] the state-court judgment should be considered *void ab initio*." *Id.* at 374. *See also In Re Pavelich*, 229 B.R. 777, 781-83 (B.A.P. 9th Cir. 1999) (a federal bankruptcy court has jurisdiction to collaterally attack an erroneous state court construction of a bankruptcy discharge because it is *void ab initio* under 11 U.S.C. § 524(a)(1)); *but see Ferren v. Searcy Winnelson Co. (In re Ferren)*, 203 F.3d 559, 559-560 (8th Cir. 2000) (holding a bankruptcy court lacks jurisdiction to review a state court decision interpreting a bankruptcy discharge). The Sixth Circuit remanded

> the case to the district court so that court may remand to the bankruptcy court to determine whether the debt was discharged. If the debt was discharged, then the state-court judgment was a modification of the discharge order and is *void ab initio*. If the debt was not discharged pursuant to the bankruptcy court's discharge order, then the state-court judgment was not a modification of the discharge order and the *Rooker-Feldman* doctrine would bar federal-court jurisdiction.

*Id.* at 376. *In re Hamilton* stands for the proposition that, in the Sixth Circuit, a federal bankruptcy court can *review* a state court decision that construes a discharge incorrectly, but it does not establish a right for a state court plaintiff to seek a declaratory judgment in federal court as to whether a debt has been discharged by a bankruptcy order prior to the state court reaching a decision.

There are sound reasons why the first court (or in this case, the second court) to gain jurisdiction over an issue should be allowed to reach final judgment before a reviewing

14

court weighs in on an issue at a party's request. For example, the case could settle, the party requesting review could prevail in the lower court, and, generally, "piecemeal appeals are strongly disfavored" by federal courts. *United States v. Kirk*, 852 F.2d 1288 (6th Cir. 1988) (citing *United States v. Hollywood Motor Co*., 458 U.S. 263 (1982) (*per curiam*)). Despite this fact, however, for the specific purposes of the *Grand Trunk* test, this Court must conclude that exercising jurisdiction here would help clarify the legal relations at issue.

### 4. The Declaratory Remedy is Being Used for Procedural Fencing and Forum Manipulation

As to the third *Grand Trunk* factor, Long's action for declaratory relief is precisely an attempt to use this Court in impermissible "procedural fencing" and forum manipulation. Long's action for declaratory relief is an attempt to have this Court do what the state court has already refused to do (at least until the resolution of the Texas Federal Litigation): pass judgment on whether CVS is liable as a successor by merger to all E-Ferol liabilities of Revco. "It would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed [exclusively] by federal law, between the same parties." *Brillhart*, 316 U.S. at 495. In *Brillhart,* which involved a declaratory judgment action regarding insurance coverage filed in federal court while a state court garnishment proceeding was pending, the Supreme Court remanded a declaratory judgment action to the district court for consideration of whether the claims asserted by the declaratory judgment plaintiff were foreclosed by state law, or could adequately be tested in a pending state court lawsuit.

> Where a District Court is presented with a claim such as was made here, it should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.

15

*Brillhart*, 316 U.S. at 495. As discussed above, this Court agrees with Long that the "question in controversy" can be answered by the state court. And, given the narrow nature of the question presented here in light of the scope of the extensive state court litigation, this question "can better be settled in the proceeding pending in the state court." *Id.* "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.*

### 5.    The Exercise of Declaratory Judgment Jurisdiction Would Increase the Friction Between the State and Federal Courts

In determining whether the exercise of declaratory judgment jurisdiction would increase the friction between the federal and state courts, the fourth factor articulated in *Grand Trunk*, three factors are considered: 1) whether the underlying factual issues are important to an informed resolution of the case; 2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and 3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory action. *Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003). As discussed under the first factor above, the underlying factual issues are important to an informed resolution of this case.

The state court is in a better position to evaluate these factual issues than is this Court. The parties before the state court include the physicians who treated Christina Long and the hospital where she was administered E-Ferol. Long alleges that the physicians and the hospital "undertook extensive efforts to cover-up and conceal from the parents of all infants to whom E-Ferol had been administered and from the public at large that its NICU [Neonatal Intensive Care Unit] had dispensed E-Ferol to any patient." (Doc. No. 1-3 at p. 14 ¶ 50.) Long asserts the "Medical Providers had an absolute duty inform [him]" of the role E-Ferol played in his daughter's death and that, because he was not so informed, his "claims did not accrue until

16

November 2007 [when notified by class counsel in the Texas Federal Litigation] as matter of Ohio law [. . .]" Whether Long was ever informed, and if so, when, about the administration of E-Ferol to his daughter is a crucial aspect of this litigation, a matter of Ohio law, and will necessitate the involvement of several parties, all of whom are in front of the state court, and none of whom are before this Court. There is certainly a close nexus between the underlying factual and legal issues and Ohio law. Finally, while the declaratory judgment action implicates federal statutory law, there is no dictate that only a federal court can decide the issue. *See In re Hamilton, supra.*

       This Court therefore concludes that entertaining Long's declaratory judgment action would increase the friction between the federal and state courts. This is particularly so in this case where the discrete issues before this Court (whether plaintiff's claims against CVS have been released and/or discharged through bankruptcy) are already before the state court for its consideration.

      6.   **An Alternate Remedy is Better or More Effective**

       The fifth and final *Grand Trunk* factor also weighs against exercising jurisdiction over Long's declaratory judgment action because an alternative remedy is better or more effective as to Long's interests. That remedy is to await the decision of the Texas district court, which may or may not make this case entirely moot,[6] and then to allow the state court action, in the forum that *Long chose*, to proceed. *See Bituminous*, 373 F.3d at 815 (finding that plaintiff

---

[6] In his motion to alter or amend the judgment, and unlike in his opposition to CVS's previously granted motion to dismiss, Long appears to recognize that the pending resolution of his status in the Texas district court is a prerequisite determination any judicial action in Ohio: "Similarly, if Long is not allowed to opt-out and the settlement is approved after any appeals resulting in his claims against CVS being finally determined, CVS should by [a motion to reopen this case] be able to obtain a final dismissal with prejudice of Long's claims in this case." (Doc. No. 14 at p. 14 n. 4.)

"could have presented its case to the same court that will decide the underlying tort action").

This is not a case where an interested non-party to the underlying state court action filed a declaratory judgment action to determine its rights in federal court. *Cf. Northland Ins. Co.*, 327 F.3d at 454 (rejecting contention that non-party insurer could intervene in underlying state court action was necessarily a "better or more effective alternative remedy" in declaratory judgment action brought by insurer against insured seeking declaration of rights with respect to duty to defend the insured in the state court action). Nor is this a case where *CVS* sought declaratory judgment to determine its rights and liabilities in the underlying state lawsuit. This is a case where a state court *plaintiff* brought a declaratory judgment action against a state court defendant seeking a declaration of rights with respect to an issue of law that is squarely before the state court. Not happy with the state court's action, Long wants to take a mulligan[7] in federal court. To allow him to do so would offend the principles of comity. In this situation, the Court concludes "the better or more effective remedy" is in the state court, the one Long himself chose.

### 7.    Balancing the *Grand Trunk R.R. Co.* Factors

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced [. . .]." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008). In this case, only the second factor, clarification of the legal relations at issue, points towards exercising jurisdiction. The first, and third through fifth factors clearly counsel against exercising jurisdiction. In light of the "unique and substantial discretion in deciding whether to declare the rights of litigants" conferred on this Court by the Declaratory Judgment Act, *see Wilton v. Seven*

---

[7] A mulligan is a do-over, "[a]n extra stroke allowed after a poor shot (esp. a tee-shot) in a friendly game [of golf], not counted on the score card." OXFORD ENGLISH DICTIONARY, (2004 edition)

18

*Falls Co.*, 515 U.S. 277, 286 (1995), this Court declines to exercise its discretion to exercise jurisdiction.

### 8.    Conclusion as to the Motion to Vacate this Court's Judgment

This Court's Memorandum Opinion and Order clearly set forth the reasons why the application of the first-to-file rule was appropriate and held that the issue of whether CVS is liable as a successor by merger to all E-Ferol liabilities of Revco was a matter for the first-filed court, the United States District Court for the Northern District of Texas, to decide. In that decision, the Court dismissed Long's complaint rather than staying these proceedings. Today, the Court reaffirms that dismissal remains the appropriate remedy. Long's declaratory judgment action, as he now recognizes, is, in the first instance, merely hypothetical at this point and is totally contingent on his gaining a favorable outcome in Texas. Moreover, Long's contingent declaratory judgment action presents an issue that is squarely before the "second-filed court," the Ohio state court where Long instituted his substantive complaint against CVS. Dismissing Long's declaratory judgment complaint in front of this "third-filed" Court rather than staying this action is appropriate. Therefore, Long's motion to vacate this Court's Judgment is **DENIED**.

## IV.    STANDARD OF REVIEW

For the foregoing reasons, Long's motion to alter or amend this Court's Judgment is **GRANTED**. Long's motion to vacate that Judgment is **DENIED**. An amended memorandum opinion and order and judgment entry shall be filed to reflect this Court's ruling herein.

**IT IS SO ORDERED**.

Dated:        February 11, 2010

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**

19